No. 25-6233

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Jonathon Hill and Phillip Rowton,

Plaintiffs-Appellants,

v.

Amentum Services, Inc.,

Defendant-Appellee.

On Appeal from a Final Judgment of the
United States District Court for the District of Nevada
Civil Action No. 23-CV-1750, Judge Miranda M. Du

## OPENING BRIEF FOR APPELLANTS JONATHON HILL AND PHILLIP ROWTON

Sarah Grossman-Swenson
Eric B. Myers
MCCRACKEN, STEMERMAN &
  HOLSBERRY
5241 Spring Mountain Rd., Bldg. B
Las Vegas, NV 89146
(702) 386-5107

Nicky Downs
Sean LaLiberte
  Student Counsel

Brian Wolfman
Natasha R. Khan
Becca Steinberg
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW
  Suite 312
Washington, D.C. 20001
(202) 662-6582

Counsel for Appellants

December 12, 2025

## Table of Contents

Table of Authorities.................................................................................iii

Introduction.............................................................................................. 1

Statement of Jurisdiction.........................................................................3

Issue Presented ........................................................................................3

Statute, Regulations, Agreement, and Policy Involved...........................4

Statement of the Case ..............................................................................4

I.    Legal background ............................................................................4

II.   Factual background and arbitration................................................6

III.  District-court proceedings ............................................................10

Summary of Argument............................................................................13

Standard of Review ................................................................................15

Argument.................................................................................................16

I.    Hill and Rowton are entitled to 90 days of differential pay
      under USERRA. ............................................................................16

      A.   USERRA Section 4316(b)(1)(B) entitles Hill and Rowton
           to 90 days of differential pay...............................................16

           1. Amentum generally provides employees 90 days of
              differential pay for active-duty leave...............................17

           2. Hill and Rowton are similarly situated to non-union
              employees to whom Amentum provides 90 days of
              differential pay for active-duty leave................................20

              a.   Hill and Rowton are similarly situated to non-union
                   comparators under the express terms of Amentum's
                   Military Leave Policy. ............................................22

              b.   Hill and Rowton are similarly situated to non-union
                   comparators for additional reasons. ........................24

              c.   The district court misapplied precedent and misread
                   Section 4316(b)(1)(B). .............................................27

      B.   USERRA protects Hill's and Rowton's right to a benefit
           established by Amentum's Military Leave Policy. ..................30

II.   Hill's and Rowton's USERRA claims are not issue-precluded. .......32

i

Conclusion ........................................................................................ 36

Certificate of Compliance ..........................................................................

Addendum ....................................................................................... 1a

# Table of Authorities

**Cases**                                                                 **Page(s)**

*Alexander v. Gardner–Denver Co.,*
   415 U.S. 36 (1974)...................................................................35

*Alexander v. Nguyen,*
   78 F.4th 1140 (9th Cir. 2023) ...........................................15

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
   575 U.S. 138 (2015)..............................................................33

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
   450 U.S. 728 (1981)..............................................................35

*Belaustegui v. Int'l Longshore & Warehouse Union,*
   36 F.4th 919 (9th Cir. 2022) ............................... 17, 20, 27, 28, 31, 32

*Caldeira v. Cnty. of Kauai,*
   866 F.2d 1175 (9th Cir. 1989)............................................35

*Calmat Co. v. U.S. Dep't of Lab.,*
   364 F.3d 1117 (9th Cir. 2004)................................. 20, 35, 36

*Clarkson v. Alaska Airlines, Inc.,*
   59 F.4th 424 (9th Cir. 2023) ..................................................4

*Columbia Exp. Terminal, LLC v. Int'l Longshore &*
   *Warehouse Union,*
   23 F.4th 836 (9th Cir. 2022) ...............................................35

*Davis v. Ineos ABS (USA) Corp.,*
   2011 WL 1114409 (S.D. Ohio Mar. 24, 2011)....................29

*Donnell v. Lee Cnty. Port Auth.,*
   509 F. App'x 903 (11th Cir. 2023)......................................29

*Fishgold v. Sullivan Drydock & Repair Corp.,*
   328 U.S. 275 (1946).................................................................5

iii

*Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr.,*
  *Gen. Drivers, Warehousemen & Helpers,*
  649 F.3d 1067 (9th Cir. 2011) ........................................................ 32

*Hardwick v. Cnty. of Orange,*
  980 F.3d 733 (9th Cir. 2020) .......................................................... 33

*Huhmann v. Fed. Express Corp.,*
  874 F.3d 1102 (9th Cir. 2017) ........................................... 27, 28, 32

*Koehler v. PepsiAmericas, Inc.,*
  2006 WL 2035650 (S.D. Ohio July 18, 2006), *aff'd*, 268 F.
  App'x 396 (6th Cir. 2008). .............................................................. 30

*Lam v. Cleveland,*
  167 N.E. 3d 124 (Ohio Ct. App. 2021) ............................................ 29

*Marshall v. W. Grain Co.,*
  838 F.2d 1165 (11th Cir. 1988) ....................................................... 29

*McDonald v. City of West Branch,*
  466 U.S. 284 (1984) ........................................................................ 35

*McKie v. Miller Brewing Co.,*
  1992 WL 150160 (M.D. Ga. 1992) ................................................... 29

*Myrick v. City of Hoover,*
  69 F.4th 1309 (11th Cir. 2023) .................................................... 5, 25

*NLRB v. U.S. Postal Serv.,*
  888 F.2d 1568 (11th Cir. 1989) ......................... 12, 14, 22, 23, 24, 28

*Peterson v. Clark Leasing Corp.,*
  451 F.2d 1291 (9th Cir. 1971) ......................................................... 33

*SEC v. Barry,*
  146 F.4th 1242 (9th Cir. 2025) ....................................................... 15

*Shapley v. Nevada Bd. of State Prison Comm'rs,*
  766 F.2d 404 (9th Cir. 1985) .......................................................... 33

iv

*Sw. Pet Prods., Inc. v. Koch Indus., Inc.*,
 32 F. App'x 213 (9th Cir. 2002)........................................................ 33

*Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*,
 823 F.3d 524 (9th Cir. 2016)............................................................ 19

*Syverson v. Int'l Bus. Machines Corp.*,
 472 F.3d 1072 (9th Cir. 2007)......................................................... 33

*Travers v. Fed. Express Corp.*,
 8 F.4th 198 (3d Cir. 2021).................................................................. 5

*Walters v. Metropolitan Ed. Enters., Inc.*,
 519 U.S. 202 (1997).......................................................................... 17

*Wisconsin Bell, Inc. v. United States ex rel. Heath*,
 604 U.S. 140 (2025).......................................................................... 17

*Ziober v. BLB Res., Inc.*,
 839 F.3d 814 (9th Cir. 2016)......................................................... 4, 5

**Statutes**

28 U.S.C. § 1291 ................................................................................... 3

28 U.S.C. § 1331 ................................................................................... 3

29 U.S.C. § 152(3) .............................................................................. 22

29 U.S.C. § 152(11) ............................................................................ 22

38 U.S.C. §§ 4301-35 ........................................................................... 3

38 U.S.C. § 4301(a)(1).......................................................................... 4

38 U.S.C. § 4301(a)(2).......................................................................... 4

38 U.S.C. § 4302(b) ............................................................ 3, 12, 15, 31

38 U.S.C. § 4313(a)(2)(A)................................................................... 26

38 U.S.C. § 4316(b)(1).......................................................................... 5

38 U.S.C. § 4316(b)(1)(B)............................2, 10, 12, 16, 17, 20, 24

38 U.S.C. § 4316(c) ..............................................................5

38 U.S.C. § 4317(a)(1)...........................................................5

38 U.S.C. § 4323(b)(3)...........................................................3

**Regulations**

20 C.F.R. § 1002.7(a) ..........................................................31

20 C.F.R. § 1002.149...........................................................25

20 C.F.R. § 1002.150(a) ....................................................2, 5, 24

20 C.F.R. § 1002.193...........................................................26

20 C.F.R. § 1002.193(a) .......................................................26

**Other authorities**

*Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed.
    1991).....................................................................25

Oxford Eng. Dictionary (2d ed. 1989) .......................................17

Piscitielli, Kathryn & Still, Edward, *The USERRA Manual*
    (2025)................................................................24, 25

Restatement (Second) of Judgments § 27 (Am. Law Inst.
    1982).................................................................11, 32

Restatement (Second) of Judgments § 27 cmt. c (Am. Law.
    Inst. 1982) ...........................................................33

Scalia, Antonin & Garner, Bryan A., *Reading Law: The
Interpretation of Legal Texts* (Thomson/West 2012) .........................17

## Introduction

Through the Uniformed Services Employment and Reemployment Rights Act of 1994, or USERRA, Congress sought to safeguard the employment of military reservists who interrupt their lives to serve their country at great personal risk. USERRA recognizes that sacrifice by requiring the nation's employers to provide modest accommodations in return.

After multiple tours of service in the Army, Jonathon Hill and Phillip Rowton continue to serve their country as military reservists. Between tours of duty, they work at Amentum Services, a private contractor that hires current and former servicemembers with the training necessary for the company's test-range work on behalf of the United States military. After serving active-duty tours in 2021 and 2022, Hill and Rowton sought differential-pay benefits—the difference between their military pay and what they would have otherwise earned at Amentum—under Amentum's Military Leave Policy. That Policy applies by its terms to "all Amentum employees" "unless precluded by explicit language" in a collective bargaining agreement (CBA).

Amentum refused Hill's and Rowton's requests. Citing their union membership, Amentum asserted—contrary to the language of its Military Leave Policy—that their union's CBA made them ineligible for the Policy's benefits. When the union pursued a grievance on Hill's

1

behalf, an arbitrator denied it. Looking only at the language of the union's CBA, the arbitrator found that the CBA alone did not affirmatively entitle Hill to differential-pay benefits under the Military Leave Policy. But the arbitrator did not address whether the CBA contained "explicit language" that "precluded" the Policy's application to Hill.

Hill and Rowton then sued Amentum under USERRA, which prohibits employers from denying employees a military-leave benefit that it generally provides to similarly situated employees. *See* 38 U.S.C. § 4316(b)(1)(B); 20 C.F.R. § 1002.150(a). That is exactly what Amentum did here. The differential-pay benefit is generally provided because Amentum's Military Leave Policy applies to "all" employees unless precluded by explicit language in a CBA, and Hill and Rowton's CBA grants active-duty leave "in accordance with Company Policy." Despite this seemingly plain language, the district court did not consider the interaction between the Military Leave Policy and the CBA. Instead, it adopted a *per se* rule that has no basis in USERRA: Union employees cannot be similarly situated to their non-union colleagues.

That's wrong. For one thing, when an employer's policy applies the same rule to union and non-union employees alike—as Amentum's Military Leave Policy does here—the two groups necessarily are similarly situated under that policy. For another, USERRA supersedes any "contract, agreement, policy, plan, [or] practice" that "reduces, limits, or

2

eliminates in any manner" any right or benefit that USERRA provides or protects. 38 U.S.C. § 4302(b). So, when Amentum adopted a Military Leave Policy that promised benefits to "all" of the military servicemembers the company employs, those benefits gained USERRA's full protection. In denying Hill and Rowton a benefit that it generally provides to other employees, Amentum violated USERRA. This Court should reverse.

## Statement of Jurisdiction

Plaintiffs-Appellants Jonathon Hill and Phillip Rowton sued their employer, Defendant-Appellee Amentum Services, Inc., under USERRA, 38 U.S.C. §§ 4301-35. 2-ER-146. The district court had jurisdiction under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3). 2-ER-146. On September 4, 2025, the district court denied Hill and Rowton's motion for partial summary judgment as to liability and granted Amentum's cross-motion for summary judgment, disposing of all claims. 1-ER-2, 8-9. Hill and Rowton timely filed a notice of appeal on October 2, 2025. 2-ER-152-53. This Court has jurisdiction under 28 U.S.C. § 1291.

## Issue Presented

Whether Amentum violated USERRA by refusing to provide Hill and Rowton—Amentum employees and union members—with the same 90 days of differential pay for military leave that it provides to its non-union employees under its generally applicable Military Leave Policy.

3

## Statute, Regulations, Agreement, and Policy Involved

Relevant statutory and regulatory provisions, as well as relevant provisions of Amentum's Military Leave Policy and the applicable collective bargaining agreement, appear in the addendum to this brief.

## Statement of the Case

Jonathon Hill and Phillip Rowton sued their employer, Amentum, under USERRA for failing to provide them 90 days of differential pay—a benefit provided to other Amentum employees—when the military called them to active-duty service.

### I.      Legal background

USERRA seeks to "encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service" and to "minimize the disruption to the lives of [servicemembers] … by providing for the[ir] prompt reemployment[.]" 38 U.S.C. § 4301(a)(1)-(2). Stated simply, "USERRA recognizes that those who serve in the military should be supported, rather than penalized, for their service." *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 429 (9th Cir. 2023).

"The Supreme Court and this court have repeatedly affirmed" that USERRA and other statutes addressing veteran reemployment are "'to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.'" *Ziober v. BLB Res., Inc.*, 839 F.3d

4

814, 819 (9th Cir. 2016) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). This construction "ensure[s] that veterans may take full advantage of the substantive rights and protections provided by [the] statute." *Id.* at 820. Accordingly, "when two plausible interpretations of USERRA exist—one denying benefits, the other protecting the veteran—[courts] must choose the interpretation that protects the veteran." *Myrick v. City of Hoover*, 69 F.4th 1309, 1318 (11th Cir. 2023). That is, "any interpretive doubt is construed in favor of the service member[.]" *Travers v. Fed. Express Corp.*, 8 F.4th 198, 208 n.25 (3d Cir. 2021).

USERRA accomplishes its objectives by imposing obligations on employers. *See, e.g.*, 38 U.S.C. § 4316(c) (establishing a period during which an employer may terminate a reemployed servicemember only for cause); *id.* § 4317(a)(1) (requiring employers to extend healthcare coverage to employees on military leave). Relevant here, USERRA provides that an employee on military leave "shall be … entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave … under a contract, agreement, policy, practice, or plan[.]" *Id.* § 4316(b)(1). In other words, an employee is entitled to the non-seniority benefits that the employer provides to "similarly situated employees[.]" 20 C.F.R. § 1002.150(a).

## II.  Factual background and arbitration

**The parties.** Amentum contracts to provide services to the United States military, 2-ER-22, including identifying and removing unexploded ordnance (ammunition or bombs) from military test ranges. 1-ER-3; 2-ER-77. Ordnance disposal is specialized, dangerous work. 2-ER-145. Amentum employs only current or former military explosive ordnance disposal (EOD) technicians—all of whom attended the military's EOD school—as Unexploded Ordnance (UXO) technicians. 2-ER-22.

Jonathon Hill and Phillip Rowton are Army veterans who served multiple active-duty tours. 2-ER-148-49. After several years in the Army, Hill attended EOD school and joined the Air Force Reserve as an EOD expert. 2-ER-25, 148. Rowton likewise attended EOD school following his Army service and later became a reservist EOD expert for the Air National Guard. 2-ER-148-49.

In 2020, Amentum hired Hill and Rowton as UXO technicians. 2-ER-148-49. Both are members of a bargaining unit represented by Teamsters, Chauffeurs, Warehousemen and Helpers, Local 631 and both are covered by a collective bargaining agreement (CBA) between Amentum and Local 631. 1-ER-4. Hill and Rowton continue to serve in their military reservist positions. 1-ER-3.

**Amentum's Military Leave Policy and the CBA.** Before describing Hill and Rowton's dispute with Amentum, we explain the provisions of Amentum's Military Leave Policy and the CBA that address Amentum's

6

differential-pay benefits for its employees on military leave. 2-ER-43, 56. Differential pay compensates employees for the difference between their higher civilian pay and their lower military pay. 2-ER-43.

Amentum's Military Leave Policy sets out two categories of differential-pay benefits: active-duty leave benefits and temporary-training-duty leave benefits. 2-ER-43. Only some reservists are called to active duty each year, but all reservists must complete two weeks of temporary military training every year. 2-ER-32. For employees called to active duty, Amentum's Military Leave Policy provides "90 calendar days" of differential pay per year. 2-ER-46. For employees "ordered to temporary training duty," the policy provides ten days (or two working weeks) of differential pay. 2-ER-43, 46.

Importantly, Amentum's Military Leave Policy also sets forth who it applies to. By its terms, the Policy "applies to all Amentum employees under its exclusive control, unless precluded by explicit language in a Collective Bargaining Agreement." 2-ER-43.

The CBA, which covers all Local 631 bargaining-unit employees, including Hill and Rowton, addresses the same two types of military-leave benefits addressed by Amentum's Military Leave Policy. 1-ER-4; 2-ER-43, 56. The CBA's text does not say anything about precluding Amentum's Military Leave Policy. *See* 2-ER-56. Rather, CBA Article 40, Section 1 provides that employees on active-duty leave "will be granted a leave of absence in accordance with Company Policy and Federal Law."

7

2-ER-56; 1-ER-4. For temporary-training-duty leave, CBA Article 40, Section 2 provides differential pay for "up to the equivalent of two (2) weeks" each year. 2-ER-56; 1-ER-4.

**Amentum denies Rowton and Hill benefits.** After receiving an active-duty deployment order from the Air Force, Rowton took military leave from Amentum from January 2021 through November 2021. 2-ER-148-49. When Rowton returned, he sought the 90 days of differential pay provided in Amentum's Military Leave Policy. 1-ER-4. Amentum initially paid Rowton 688 hours of differential pay (86 days) but then refused to pay him the remaining 32 hours (four days). 1-ER-4. Amentum then asserted that its initial payment was a clerical error and demanded that Rowton return the differential pay he received beyond ten days. 1-ER-4; 2-ER-27. Amentum maintained that Rowton was entitled to only ten days of differential pay under CBA Article 40, Section 2 (the temporary-training-duty leave provision). 1-ER-4; 2-ER-27. In response, Local 631 filed a grievance on Rowton's behalf, alleging that Amentum improperly denied him the 90-day differential-pay benefit under the company's Military Leave Policy. 2-ER-27. Amentum denied the grievance. 2-ER-27.

Like Rowton, Hill received an active-duty deployment order and was required to take military leave from Amentum between June 2021 and June 2022. 2-ER-26. When he returned, Hill sought the 90-day differential-pay benefit provided by the company's Military Leave Policy. 1-ER-4. Amentum denied his request, 1-ER-4, explaining that Hill could

8

not apply for differential-pay benefits because Rowton's grievance on that topic was pending. 2-ER-27.

Local 631 filed a separate grievance on Hill's behalf before agreeing with Amentum to consolidate the two grievances for arbitration, the next step in the grievance process. 2-ER-27-28. Prior to arbitration, however, Local 631 withdrew Rowton's grievance, meaning that the forthcoming arbitration would apply to Hill alone. *See* 2-ER-28.

**Hill's arbitration.** Hill's grievance proceeded to arbitration. Local 631 maintained that CBA Article 40, Section 1 entitled Hill to the 90 days of differential pay for active-duty military leave set out in Amentum's Military Leave Policy. 2-ER-28-29. The arbitrator characterized his jurisdiction as limited to the adjudication of Hill's "grievance." 2-ER-20-21. CBA Article 30, which describe the agreement's grievance and arbitration procedure, defines "grievance" as "a dispute regarding the interpretation and/or application of the particular provisions of this Agreement[.]" 2-ER-126. The arbitrator's decision, therefore, was also limited to the "interpretation and/or application" of the CBA's provisions—in this case, whether CBA Article 40, Section 1 entitled Hill to 90 days of differential pay. 2-ER-126; 2-ER-21, 30-34; 1-ER-14. The arbitrator held that it did not. 2-ER-33-34.

The arbitrator found that although CBA Article 40, Section 1 expressly required Amentum to grant its employees leave "in accordance with Company Policy," that CBA provision "does not provide any specific pay

9

entitlements for [covered] employees" or "refer to a specific 'Company Policy'" that would establish those entitlements. 2-ER-32. He reasoned that the CBA therefore "left to [Amentum's] sole discretion" any decision about differential pay for Local 631 employees. 2-ER-32. The arbitrator thus concluded that Amentum did not—in effect, could not—violate the CBA by limiting Hill's active-duty leave pay to the same ten-day period he would have received for temporary-training duty. *See* 2-ER-32-33. Though the arbitrator acknowledged Amentum's Military Leave Policy, he did not address whether the CBA contained the "explicit language" necessary to "preclude" application of the Policy, which provides 90 days of differential active-leave pay to "all" full-time Amentum employees. *See* 2-ER-32.

### III. District-court proceedings

Hill and Rowton then sued Amentum in the District of Nevada. 2-ER-144-51. They alleged that Amentum violated USERRA, 38 U.S.C. § 4316(b)(1)(B), when it refused to provide them the same differential-pay benefits it granted to other Amentum military reservists called to active duty. 2-ER-145, 149-50. They sought backpay, economic damages, and injunctive relief to ensure Amentum's future compliance with USERRA, as well as costs and attorney fees. 2-ER-150.

**A.** Amentum moved to dismiss, arguing that issue preclusion barred Hill's and Rowton's claims, based on the arbitrator's decision. ECF 6 at

10

7-12. The district court converted Amentum's motion to one for summary judgment because the company had relied on evidence beyond the pleadings. 1-ER-13-14.

The court then denied the motion. 1-ER-16. To start, because Local 631 had withdrawn Rowton's grievance before arbitration, the district court recognized that "the arbitrator's decision cannot possibly have had issue preclusive effect on Rowton's claim in this case." 1-ER-15. As to Hill, the court recognized that the CBA defines "grievance" to include only disputes about the meaning of its provisions, 1-ER-14, observing that the arbitrator "only could, and only did" decide Hill's contractual claim under the CBA, 1-ER-10. The court therefore held that a "grievance" under the CBA could not include USERRA claims. 1-ER-15. Because the USERRA claim and the arbitrated claim were not identical, the USERRA claim could not be issue-precluded. *See* 1-ER-14 (observing that the USERRA claim would not involve "the application of the same rule of law as that involved in the prior proceeding.") (internal citations omitted); *see also* Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982).

**B.** After discovery, Hill and Rowton moved for partial summary judgment on the issue of liability, and Amentum cross-moved for summary judgment. ECF 24; ECF 34; 1-ER-3-9. Amentum maintained that, as Local 631 members, Hill and Rowton were not, under USERRA Section 4316(b)(1)(B), "'similarly situated' to employees outside their bargaining unit" who received 90 days of differential pay for active-duty

11

leave under the company's Military Leave Policy. 1-ER-6; *see* 38 U.S.C. § 4316(b)(1)(B).

The district court agreed. 1-ER-6. It rejected Hill and Rowton's argument that union and non-union employees are similarly situated when a single overarching policy applies to all employees regardless of collective-bargaining status. 1-ER-7 n.5 (citing *NLRB v. U.S. Postal Serv.*, 888 F.2d 1568, 1571 (11th Cir. 1989)). The court maintained that because the "benefits of employment vary depending on membership in a bargaining unit, only employees within the same bargaining unit" are similarly situated under USERRA. 1-ER-6. That rule applies "even if a generally provided policy is at issue" because, according to the court, employees "covered under the CBA are sufficiently more similar to other employees within the same bargaining unit than employees who are not." 1-ER-7. Without further explanation, the court then held that Amentum's refusal to provide Hill and Rowton the same 90 days of differential pay it would provide to non-union employees did not violate USERRA. 1-ER-8-9.

By the same token, the court dispensed with Hill and Rowton's reliance on USERRA Section 4302(b), which provides that USERRA supersedes any "contract, agreement, policy, plan, [or] practice ... that reduces, limits, or eliminates in any manner any right or benefit provided under this chapter," 1-ER-7-8 (quoting 38 U.S.C. § 4302(b)). "The fact that the CBA does not provide the same military leave compensation

12

benefits as those outside the bargaining unit," the court held, "does not qualify as a reduction of any right guaranteed by USERRA." 1-ER-8.

In reaching these conclusions, the district court declined to address Amentum's Military Leave Policy, which, as explained earlier (at 7), covers all Amentum employees "unless precluded by explicit language in a Collective Bargaining Agreement," 2-ER-43. The district court nowhere considered whether Local 631's CBA contains the "explicit language" necessary to preclude the Military Leave Policy's application to Hill and Rowton. *See* 1-ER-3-9; 2-ER-43. In a footnoted aside—and notwithstanding its earlier ruling that the arbitrator's decision was not issue-preclusive, 1-ER-14—the court deferred to the "final binding arbitration decision" that "the Military Leave Policy does not apply[.]" 1-ER-7 n.5. In the same footnote, however, the court acknowledged that whether the Military Leave Policy covers CBA employees like Hill and Rowton is "disputed." 1-ER-7 n.5.

## Summary of Argument

**I.A.** USERRA Section 4316(b)(1)(B) entitles employees on military leave to any non-seniority benefit, including differential pay, that their employer "generally provide[s]" to similarly situated employees. The 90-day differential-pay benefit Amentum denied to Hill and Rowton is generally provided because Amentum's Military Leave Policy, by its terms, applies to "all Amentum employees" unless precluded by explicit

13

language in a CBA. For its part, Local 631's CBA grants active-duty leave "in accordance with Company Policy." The CBA, therefore, adopts—not precludes—benefits under Amentum's Military Leave Policy.

Hill and Rowton are similarly situated to their non-union counterparts under USERRA Section 4316(b)(1)(B). When an employer's policy applies equally to union and non-union employees, the two groups necessarily are similarly situated. *See NLRB v. U.S. Postal Serv.*, 888 F.2d 1568, 1571 (11th Cir. 1989). The only eligibility criterion for the Military Leave Policy's benefits is full-time employment. So, as full-time employees, Hill and Rowton share the only relevant status under the Policy with Amentum's non-union employees.

The district court's contrary conclusion—that union and non-union employees are *per se* dissimilar—imposes a limitation that appears nowhere in USERRA Section 4316(b)(1)(B). The district court relied on caselaw that demonstrates only the indisputable proposition that union and non-union employees sometimes are poor comparators. But it did not consider the situation here, where the same rule applies to all employees, regardless of bargaining-unit membership.

**B.** Though USERRA did not require Amentum to adopt its Military Leave Policy, once Amentum did so, USERRA protected the benefits of employment that the Policy established. In denying Hill and Rowton differential pay under its Military Leave Policy, Amentum sought to reduce or eliminate a USERRA-protected benefit. USERRA Section

14

4302(b) forbids that action by superseding any policy or practice Amentum invokes to justify it.

**II.** The arbitration decision does not preclude either Hill's or Rowton's USERRA claims. Rowton was not a party to the arbitration, so the arbitrator's decision cannot have preclusive effect as to his USERRA claim. Nor is Hill's USERRA claim issue-precluded. Hill's arbitration claim was cabined by the CBA. By contrast, his USERRA claim here requires applying a different rule of law—USERRA Section 4316(b)(1)(B)—to evaluate whether he was denied a benefit generally provided to similarly situated employees. That dissimilarity bars issue preclusion and comports with precedent holding that contractual arbitration decisions do not preclude federal statutory claims, even when the underlying facts overlap.

### Standard of Review

This Court reviews the district court's grant of summary judgment de novo. *See SEC v. Barry*, 146 F.4th 1242, 1251 (9th Cir. 2025). When reviewing a grant of summary judgment, courts must "view all facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Alexander v. Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023).

## Argument

### I. Hill and Rowton are entitled to 90 days of differential pay under USERRA.

#### A. USERRA Section 4316(b)(1)(B) entitles Hill and Rowton to 90 days of differential pay.

To prevail under USERRA Section 4316(b)(1)(B), Hill and Rowton must show that they were denied a non-seniority benefit—such as differential pay for active-duty military leave—that is "generally provided by the employer" to employees "having similar seniority, status, and pay." 38 U.S.C. § 4316(b)(1)(B). For the reasons we now explain, the 90-day differential pay benefit that Amentum denied to Hill and Rowton is generally provided to similarly situated employees.

Although the district court separated "generally provided" and "similarly situated" as distinct statutory elements, 1-ER-7, Section 4316(b)(1)(B) does not describe them that way. It asks one thing: whether a benefit is generally provided to like employees. And when, as here, a benefit is generally provided to all employees (regardless of their seniority, status, and pay), those two elements collapse. Employees *necessarily* are similarly situated with respect to a benefit they are all entitled to. That understanding resolves this case and requires reversal.

One other preliminary point before we demonstrate why Hill and Rowton satisfied Section 4316(b)(1)(B): Contrary to Amentum's argument below, *see* ECF 34 at 9; ECF 37 at 6-7, Section 4316(b)(1)(B) does not demand that an employer discriminate based on the employee's

military status. *See* 38 U.S.C. § 4316(b)(1)(B). So, it is "no answer" to a suit seeking to enforce Section 4316(b)(1)(B) that the employer has denied a benefit "available only to servicemembers," as Amentum did here. *Belaustegui v. Int'l Longshore & Warehouse Union*, 36 F.4th 919, 927 (9th Cir. 2022).

### 1. Amentum generally provides employees 90 days of differential pay for active-duty leave.

**a.** Because USERRA does not define "generally provided," those words "are assumed to bear their ordinary, contemporary, common meaning." *Walters v. Metropolitan Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (Thomson/West 2012). "Generally" means "[a]s a general rule; in most instances, usually, commonly." *Generally*, Oxford Eng. Dictionary (2d ed. 1989).[1] To "provide" means "[t]o furnish or supply (a person, etc.) with something." *Provide*, Oxford Eng. Dictionary (2d ed. 1989); *accord Wisconsin Bell, Inc. v. United States ex rel. Heath*, 604 U.S. 140, 149 (2025). Something is generally provided, then, when it is supplied in most instances.

According to Amentum itself, the company's 90-day differential-pay benefit is supplied in most instances to qualifying Amentum employees. That much is clear from Amentum's Military Leave Policy. It entitles full-

---

[1] This brief cites an edition of the *Oxford English Dictionary* published roughly contemporaneously with USERRA's enactment in 1994.

time employees on active-duty leave to 90 days of differential pay and applies to "all Amentum employees under its exclusive control, unless precluded by explicit language in a Collective Bargaining Agreement." 2-ER-43-44.

Local 631's CBA does not preclude the application of Amentum's policy, explicitly or otherwise. To the contrary, Article 40, Section 1 provides that active-duty leave is granted "in accordance with Company Policy and Federal Law." 2-ER-56.

The CBA thus establishes that union employees will be granted leave "in accordance with" company policy, which, in turn, entitles full-time employees who take active-duty military leave to 90 days of differential pay. 2-ER-43-44. Because the 90-day benefit applies to all Amentum employees regardless of bargaining-unit status, it is generally provided.

**b.** The district court did not directly address whether the 90-day benefit was generally provided, *see* 1-ER-7, and never considered the language in Amentum's Military Leave Policy stating that it "applies to all Amentum employees … unless precluded by explicit language in a collective bargaining agreement." 2-ER-43. The court noted only that "a final binding arbitration decision already determined the Military Leave Policy does not apply to CBA employees like Plaintiffs." 1-ER-7 n.5. (Paradoxically, however, the same footnoted passage acknowledged that "the application of the Military Leave Policy to CBA employees like [Hill and Rowton] is disputed." 1-ER-7 n.5.)

18

The district court's initial characterization of the arbitrator's decision—that the arbitrator determined that Amentum's Military Leave Policy does not apply to bargaining-unit employees—misconstrued that decision. The arbitrator decided only "whether employees are entitled to active duty military leave pay *under Article 40 of the Contract*." 2-ER-31 (emphasis added). The arbitrator did not address whether the CBA contained "explicit language" necessary to preclude the application of Amentum's Military Leave Policy. *See* 2-ER-30-34, 43. The two inquiries are distinct. The first (addressed by the arbitrator) is about whether Article 40 affirmatively *provides* the 90-day benefit; the second (relevant here) is about whether the CBA *explicitly precludes* benefits established by Amentum's otherwise applicable Military Leave Policy.

Put differently, it is irrelevant to Hill's and Rowton's USERRA claims whether Article 40, Section 1 independently guarantees the 90-day benefit; so long as the CBA does not expressly bar application of Amentum's Policy, the benefit applies to bargaining-unit employees under USERRA. The arbitrator's decision thus has no bearing on whether the 90-day benefit is generally provided under USERRA.

**c.** Even if (counterfactually) the arbitrator's decision had focused on the question whether the 90-day benefit is generally provided, deference to labor-arbitration awards attaches only when the award itself is being appealed, *see Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016), not in a subsequent judicial proceeding

19

based on a statutory claim, *see Calmat Co. v. U.S. Dep't of Lab.*, 364 F.3d 1117, 1126-27 (9th Cir. 2004). Here, Hill and Rowton are not appealing the arbitrator's decision; they are raising a USERRA claim independent of the contractual claim adjudicated at arbitration, so deference could not be warranted.

Deferring to the arbitrator's decision to resolve whether the 90-day benefit is "generally provided" under USERRA Section 4316(b)(1)(B) would create the preclusive effect that the district court (correctly) foreclosed earlier in the litigation. 1-ER-14-16; *see infra* at 32-36. This Court must make its own determination as to whether the 90-day benefit is generally provided. That is especially true because "USERRA is liberally construed for the benefit of those who left private life to serve their country[.]" *Belaustegui*, 36 F.4th at 923.

### 2. Hill and Rowton are similarly situated to non-union employees to whom Amentum provides 90 days of differential pay for active-duty leave.

When an employer generally provides a non-seniority benefit to its employees, dissimilarity in seniority, status, and pay is the only permissible basis under USERRA for an employer to deny that benefit to military reservists. *See* 38 U.S.C. § 4316(b)(1)(B). Amentum did not establish that any such dissimilarity exists between Hill, Rowton, and Amentum's non-union employees. Nor could it. Again, Amentum's full-time employees (including Hill and Rowton) necessarily are similarly

20

situated with respect to a benefit that all full-time Amentum employees are entitled to. *See supra* at 16. When an employer's policy applies one rule even to groups that may be dissimilar in other ways, viewing the statute's "generally provided" and "similar[ity]" language as if they are two "element[s]" of a Section 4316 claim, as the district court did, 1-ER-7, is misguided. As we show below, analyses of those terms are two sides of the same coin, and both analyses compel the same result.

Before we proceed, it is worth pausing to observe that the district court's analysis cannot be squared with Section 4316(b)(1)(B)'s text. After characterizing similarity in "seniority, status, and pay" as an "element" of the claim, s*ee* 1-ER-6-7, the court did not evaluate Hill's and Rowton's similarity under any of those statutory factors, *see* 1-ER-7-9. Rather than assessing whether their CBA made Hill and Rowton dissimilar in seniority, status, and pay from other Amentum employees, as the statute contemplates, the court instead based its holding on its view of the relationship between collective bargaining and "benefits of employment" more generally. *See* 1-ER-6-8. That atextual view led the court to adopt a *per se* rule of dissimilarity between union and non-union employees, undermining USERRA's protections for reservists (like Hill and Rowton) who are union members. *See* 1-ER-7.

Hill and Rowton are similarly situated to Amentum's non-union employees for two separate reasons. The first, as we have indicated, is that Amentum's Military Leave Policy applies the same rule to all

21

Amentum employees, so the Policy provides the company no permissible basis for treating Hill and Rowton differently. Second, because membership in a collective-bargaining unit is not a "status" under USERRA, Amentum did not—and could not—establish that Hill or Rowton is dissimilar in status to Amentum's non-union employees. (And no one has ever suggested that Hill and Rowton are dissimilar in seniority or pay from employees who receive benefits under the Military Leave Policy.) Hill and Rowton are therefore entitled to the same 90-day benefit Amentum provides to its non-union reservists.

### a. Hill and Rowton are similarly situated to non-union comparators under the express terms of Amentum's Military Leave Policy.

When an employer's policy applies generally to different groups of that company's employees, those employees are similarly situated under that policy. *See NLRB v. U.S. Postal Serv.*, 888 F.2d 1568, 1571 (11th Cir. 1989). That's true even when the potential comparators include both bargaining-unit employees and their non-bargaining-unit supervisors, whose roles and job responsibilities are so different that the National Labor Relations Act makes them dissimilar as a matter of law for other purposes. *Id; see* 29 U.S.C. § 152(3) (defining "employee" under the NLRA to exclude supervisors); *id.* § 152(11) (defining "supervisor" as individuals with authority to act "in the interest of the employer"). Put differently, even employees who are dissimilar in one employment context are

22

similarly situated when, under an employer's policy, "one rule … applies to both groups." *NLRB v. U.S. Postal Serv.*, 888 F.2d at 1571.

That's exactly how Amentum's Military Leave Policy works. The Policy's eligibility requirements are the same for Local 631 bargaining-unit members as for non-union employees: If they are servicemembers and full-time Amentum employees, they are eligible. 2-ER-43-44. Once eligible, bargaining-unit and non-bargaining-unit employees are entitled to the same benefits, including 90 days of differential pay for active-duty military leave. 2-ER-43-44. Beyond these eligibility requirements, the Military Leave Policy does not distinguish among the employees it covers or the benefits it confers. *See* 2-ER-43-50.

Accordingly, the Military Leave Policy repudiates the district court's view that members of the Local 631 bargaining unit are dissimilar from other employees that meet its eligibility criteria. Other than the eligibility provision, the Policy articulates only one other circumstance that could prevent its application: when it is precluded by a CBA's "explicit language." 2-ER-43. And as discussed earlier (at 18), Local 631's CBA does no such thing. *See* 2-ER-95-143.

Because it is undisputed that Hill and Rowton satisfy the eligibility criteria reflected in Amentum's Military Leave Policy—being servicemembers and full-time employees—and because the Local 631 CBA does not contain "explicit language" that precludes the policy's application, they are entitled to the benefits contained in the Policy. And,

23

finally, because the Policy applies "the same rule ... to both groups," and does not otherwise distinguish between eligible Amentum employees, Hill and Rowton are also "similarly situated" to those employees. *NLRB v. U.S. Postal Serv.*, 888 F.2d at 1571. For that reason, this Court should reverse.

### b. Hill and Rowton are similarly situated to non-union comparators for additional reasons.

**i.** As military reservists who took leave for military service, Hill and Rowton are entitled to the non-seniority rights and benefits Amentum "provides to similarly situated employees by an employment contract, agreement, policy, practice, or plan in effect at the employer's workplace." 20 C.F.R. § 1002.150(a). And when a reservist claims that he was denied a non-seniority benefit, his employer must prove that "anyone similarly on furlough or leave of absence would have been denied the non-seniority benefit." Kathryn Piscitielli & Edward Still, *The USERRA Manual: Nonseniority rights and benefits* § 3:2 (2025) (USERRA Manual) (internal citations omitted). Because neither Amentum nor the district court addressed dissimilarity in pay or seniority, and because the record contains no evidence of dissimilarities on those bases, the district court's decision could have turned only on a purported dissimilarity in "status" between union and non-union employees. *See* 38 U.S.C. § 4316(b)(1)(B).

But Hill's and Rowton's USERRA claims are bolstered, not diminished, when status is considered. As ordinarily understood in the

24

employment context, "status" refers "to an employee's position" within an organization—that is, the employee's "position or rank in relation to others." *Myrick v. City of Hoover,* 69 F.4th 1309, 1316-18 (11th Cir. 2023) (citing *Status, Merriam-Webster's Ninth New Collegiate Dictionary*, at 1152 (9th ed. 1991)); *see also* USERRA Manual § 3:2. Under that ordinary understanding of "status," Hill's and Rowton's "position" at Amentum is that of a full-time employee, meaning that under Section 4316(b)(1)(B), Amentum would be required to provide 90 days of differential pay to all full-time employees, union and non-union alike.

**ii.** This similarity in status between union and non-union employees is consistent with the two ways "status" is used in USERRA and its regulations. First, a USERRA regulation concerning "an employee's status" while on military leave provides that the employee "is deemed on furlough or leave of absence" and that "*in this status*, the employee is entitled to the non-seniority rights and benefits generally provided by the employer" to other similarly situated employees. 20 C.F.R. § 1002.149 (emphasis added). Thus, under the regulation, "status" refers to whether an employee is "on furlough or leave of absence" or not.

Hill and Rowton, therefore, have similar "status" to their comparators because the 90-day differential pay benefit is one Amentum generally provides when an employee returns from a "leave of absence" for active-duty military service. The only way to receive 90 days of differential pay under the Amentum's Military Leave Policy is to take a leave of absence

25

for active-duty military service. The Policy itself reflects this definition of status: "Employees called to Active Duty shall be placed on Leave of Absence Status." 2-ER-48. And for its part, CBA Article 40, Section 1 provides that active-duty "leave[s] of absence" will be granted "in accordance with Company Policy." 2-ER-56. Hill and Rowton's leave-of-absence "status," then, was similar—not dissimilar—to the "status" of any other Amentum employee taking leave under the company's Military Leave Policy.

USERRA's second use of "status" elaborates on the right of servicemembers to return, after a period of military service, to a position with their civilian employers of "like seniority, status, and pay," 38 U.S.C. § 4313(a)(2)(A); *see* 20 C.F.R. § 1002.193. Whether the reemployment position is of like "status" depends on several factors: the servicemember's "opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location." *See* 20 C.F.R. § 1002.193(a). Notably, the regulation does not mention union membership or lack thereof. *See id.* Neither does Amentum's Military Leave Policy, which requires only full-time employment. *See supra* at 23. Though Local 631's CBA presumably affects union employees' "general working conditions," the only condition relevant to Hill's and Rowton's eligibility for benefits under the Military Leave Policy is their full-time employment. And CBA Articles 9 and 10 establish that Hill and Rowton are full-time employees. *See* 2-ER-103-05.

26

Dissimilarity in any other work-related characteristics between union and non-union employees is irrelevant to whether two employees share a "status" under the Policy.

### c. The district court misapplied precedent and misread Section 4316(b)(1)(B).

**i.** The caselaw relied on by the district court does not support its holding. We start with *Belaustegui v. Int'l Longshore and Warehouse Union* 36 F.4th 919 (9th Cir 2022). There, a union employee sought reemployment with his civilian employer after nine years of military service. *Id.* at 921. He argued that he was entitled to a promotion and an hours-credit benefit that he would have earned if not for his military leave of absence. *Id.* at 922. The employer countered that the hours-credit benefit was not a benefit protected by USERRA. *Id.* at 925. This Court disagreed, holding that a benefit established by a CBA is a benefit of employment and thus protected by USERRA. *Id.* at 926-27 (citing *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017)).

The district court misunderstood *Belaustegui*, which held only that a benefit of employment established in a CBA is protected by USERRA. The district court took that holding to mean that when a CBA exists, the CBA alone "determine[s] the benefits of employment." 1-ER-6. And it cited no support for the next proposition that it apparently drew from *Belaustegui*: that because the "benefits of employment vary" depending on membership in a bargaining unit, "only employees within the same

27

bargaining unit are proper comparators for the purposes of USERRA." 1-ER-6. That interpretation fails to account for the circumstances where, as we have described (at 22-23), a generally applicable employer policy applies the "same rule" to union and non-union employees alike. *See NLRB v. U.S. Postal Serv.*, 888 F.2d at 1571.

Nowhere did *Belaustegui* establish what the district court suggests it did: that benefits established in a CBA are the *only* benefits of employment to which bargaining-unit members may be entitled under USERRA. 1-ER-6. Indeed, *Belaustegui*'s discussion suggests the opposite: Servicemembers who are part of a bargaining unit may still be subject to employer policies and practices not contained within the applicable CBA. *See Belaustegui*, 36 F.4th at 927-29. That's evident, too, from *Huhmann v. Federal Express Corp.*, where this Court held that a returning servicemember (and union member) was entitled to a non-CBA bonus (offered to employees because the union ratified a proposed CBA) that the employer had provided to other employees while the servicemember was on leave. 874 F.3d at 1105.

**ii.** The district court's reliance on other precedent is even further afield. *See* 1-ER-6-8. To begin with, each decision proves only a proposition that no one disputes: that union and non-union employees are sometimes poor comparators. In each case the district court cited, the union and non-union employees were dissimilar because, unlike here, the dispute arose from a workplace policy that did, in fact, apply to some

28

employees, but not to others.

In *Lam v. Cleveland*, 167 N.E. 3d 124 (Ohio Ct. App. 2021), for instance, a police officer sued the city of Cleveland under USERRA, arguing that he had been denied military-leave benefits that Cleveland had provided to other city employees. *Id.* at 127-29. The court determined that the employees the plaintiff had proposed as comparators (members of other bargaining units working for the city) were not similarly situated—not because they were members of a collective-bargaining unit, but because no generally applicable military-leave policy conferred benefits across the different CBAs. *Id.* at 132-33. The district court's reliance on other, similar cases, 1-ER-7, was wrong for the same reason— and so none of them refutes Hill and Rowton's position: When a company policy applies generally to an employer's employees, regardless of an employee's bargaining-unit membership, all employees subject to the policy are similarly situated with regard to that policy.[2]

---

[2] *See Donnell v. Lee Cnty. Port Auth.*, 509 F. App'x 903, 905 (11th Cir. 2023) (holding that union and non-union employees were dissimilar for purposes of an equal-protection challenge premised on a grievance procedure available to bargaining-unit employees under a CBA, but not to the non-union plaintiff); *Davis v. Ineos ABS (USA) Corp.*, 2011 WL 1114409, at *3-4 (S.D. Ohio Mar. 24, 2011) (similar); *Marshall v. W. Grain Co.*, 838 F.2d 1165, 1166-67 & n.1, 1170 (11th Cir. 1988) (in a Title VII case, non-union employees granted severance pay were dissimilar from union employees denied severance because the union's CBA provided for severance under only limited circumstances); *McKie v. Miller Brewing Co.*, 1992 WL 150160, at *4 (M.D. Ga. 1992) (in a Title VII case alleging discriminatory discipline, finding that union and non-

\* \* \*

In concluding that Hill and Rowton's membership in Local 631's bargaining unit makes them dissimilar to Amentum's non-union employees, the district court abandoned the case-specific similarity analysis Section 4316(b)(1)(B) demands. Its adoption of a categorical rule of dissimilarity between union and non-union employees cannot be squared with USERRA's text and undermines USERRA's objectives. Reversal is required.

## B. USERRA protects Hill's and Rowton's right to a benefit established by Amentum's Military Leave Policy.

Hill and Rowton prevail for another reason: USERRA supersedes any "contract, agreement, policy, plan, [or] practice … that reduces, limits, or eliminates in any manner any right or benefit" that USERRA provides or protects. 38 U.S.C. § 4302(b). When an employer's own policy establishes a differential-pay benefit, it qualifies as a "right or benefit" under USERRA. *See Koehler v. PepsiAmericas, Inc.*, 2006 WL 2035650, at \*4 (S.D. Ohio July 18, 2006), *aff'd*, 268 F. App'x 396, 403, 408 (6th Cir. 2008).

Because Amentum's own policy generally provides a 90-day differential-pay benefit to all eligible employees, *see supra* at 17-20, that differential pay is a "right or benefit" of Hill's and Rowton's employment protected by USERRA. Put another way, Amentum's refusal to provide

---

union employees were dissimilarly situated because a grievance process was available only to union employees).

30

Hill and Rowton differential pay is an unlawful attempt to "reduce[], limit[], or eliminate[]" a USERRA-protected benefit. 38 U.S.C. § 4302(b).

Amentum justifies this deprivation by referring to the Local 631 CBA, which it says does not entitle bargaining-unit employees to differential pay. ECF 37 at 6. But the CBA provides that employees ordered to active duty "will be granted a leave of absence in accordance with Company Policy." 2-ER-56. And Amentum's Military Leave Policy, as we have shown, includes differential pay. 2-ER-43, 46. USERRA forbids the reduction or elimination of that benefit for some, but not all, servicemembers by "supersed[ing]" any policy or practice by which Amentum deprives Hill and Rowton a benefit to which they would otherwise be entitled. 38 U.S.C. § 4302(b).

True, "USERRA does not require employers to provide employees with any kind of paid military leave," as the district court observed. 1-ER-8. But "[a]n employer may provide greater rights and benefits [to servicemembers] than USERRA requires." 20 C.F.R. § 1002.7(a). And when an employer adopts a paid military-leave policy, it creates a "benefit of employment" under USERRA—even if that benefit provides something more than the floor USERRA establishes. *See Belaustegui v. Int'l Longshore & Warehouse Union*, 36 F.4th 919, 927 (9th Cir. 2022). An employer who chooses to "extend such benefits as a right of employment [is] bound by the provisions of USERRA … not to reduce the amount of this employment benefit." *Id.* (quoting *Huhmann v. Fed.*

31

*Express Corp.*, 874 F.3d 1102, 1112 (9th Cir. 2017)). Thus, USERRA's protections kicked in as soon as Amentum adopted a 90-day differential-pay benefit in its generally applicable Military Leave Policy. Those protections prohibited Amentum from reducing or eliminating the benefit for servicemembers like Hill and Rowton while providing it to others.

## II. Hill's and Rowton's USERRA claims are not issue-precluded.

The district court correctly held that the arbitrator's decision did not preclude Hill's or Rowton's USERRA claim. 1-ER-14-16. Rowton was not a party to the arbitration, 2-ER-20, 28, so, as the district court put it, "the arbitrator's decision cannot possibly have had issue preclusive effect on Rowton's claim[.]" 1-ER-15. But because Amentum may argue that Hill's USERRA claim is issue-precluded as an alternative ground for affirmance as to Hill, we address that argument here.

An issue resolved by a prior proceeding may not be relitigated if (1) the issue was necessarily decided at the previous proceeding and is identical to the one to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom preclusion is asserted was a party or in privity with a party at the first proceeding. *Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr., Gen. Drivers, Warehousemen & Helpers*, 649 F.3d 1067, 1070 (9th Cir. 2011); *see* Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982). The party seeking issue preclusion "bears the burden of establishing these

32

requirements." *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020). Amentum cannot carry its burden because its claim for issue preclusion fails the doctrine's first requirement: that the issue in the two proceedings be "identical."

**A.** Though multiple factors can inform an issue-identity determination, *see Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1080-81 (9th Cir. 2007); Restatement (Second) of Judgments § 27 cmt. c (Am. Law. Inst. 1982), "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015); *see also Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971). That is, "[w]hen a different rule of law applies, the issue is not identical[.]" *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 32 F. App'x 213, 215 (9th Cir. 2002); *see* 1-ER-14. "Similarity between issues is not sufficient" to establish identity. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985).

As the district court recognized, 1-ER-14, Hill's USERRA claim involves a different legal standard from the standard at issue in his arbitration. The issue in the arbitration was expressly limited to whether CBA Article 40, Section 1 entitled bargaining-unit employees to 90 days of differential pay. 2-ER-21, 31. It was, necessarily, an unadorned contractual claim because CBA Article 30 limits grievances—and thus grievance arbitrations—to "dispute[s] regarding the interpretation

33

and/or application of the particular provisions of this Agreement." 2-ER-126. By contrast, the question here is whether Amentum violated USERRA by denying Hill and Rowton 90 days of differential pay set out in Amentum's own policy and provided to other Amentum employees. That analysis involves applying USERRA Section 4316(b)(1)(B)'s statutory requirements, which exceeds the arbitration's limited contractual scope.

Put differently, even if Article 40, Section 1 did not independently entitle union employees to 90 days of differential pay (as the arbitrator concluded), so long as the CBA does not explicitly preclude application of Amentum's Military Leave Policy—an issue that went unaddressed at arbitration—union employees are entitled to the 90-day military-leave benefit under USERRA. So, regardless of how the arbitrator decided the contractual claim, Hill could prevail on his Section 4316(b)(1)(B) claim here.

That dissimilarity forecloses preclusion. As the district court put it: Because "the arbitrator only addressed Hill's contractual entitlement to 90 days of active duty military leave under the CBA, not his potential statutory right to additional leave pay under USERRA," Hill's USERRA case does not involve "the application of the same rule of law as that involved in the prior proceeding." 1-ER-14 (internal citations omitted).

**B.** The non-identity of the issues in the two proceedings is underscored by precedent holding that prior arbitration decisions on contractual

34

claims do not preclude related federal statutory claims. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 56-60 (1974); *Calmat Co. v. U.S. Dep't of Lab.*, 364 F.3d 1117, 1126-27 (9th Cir. 2004). "[A]n unreviewed arbitration decision does not preclude a federal court action," *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989), when a subsequent statutory claim seeks to vindicate "specific substantive guarantees for workers," *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 848 (9th Cir. 2022); *see also McDonald v. City of West Branch*, 466 U.S. 284, 288-92 (1984) (adverse arbitration decision did not preclude Section 1983 claim); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 742-45 (1981) (adverse arbitration decision did not preclude Fair Labor Standards Act claim).

In *Alexander*, an arbitration decision that denied the plaintiff's discriminatory-discharge claim under the CBA, 415 U.S. at 42-43, did not preclude his Title VII action in federal court based on the same underlying facts. *Id.* at 43, 60. There was no preclusion because "the arbitrator ha[d] authority to resolve only questions of contractual rights … regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Id.* at 53-54.

Similarly, in *Calmat*, this Court held that an adverse arbitration decision did not preclude a plaintiff's subsequent retaliation claim against his employer—based on the same facts—under the Surface Transportation Assistance Act. 364 F.3d at 1126-27. Because the

35

arbitration decision was "limited to the four corners of the labor agreement," it "did not consider the protections offered by the STAA." *Id.* at 1127. Thus, the arbitration decision was owed no deference. *Id.*

Here too, the arbitrator's decision does not preclude Hill's USERRA claim because the CBA limits arbitrations to "dispute[s] regarding the interpretation and/or application of the particular provisions of" the CBA. 2-ER-126. So, the arbitrator could not—and did not—resolve Hill's USERRA claim.

## Conclusion

The Court should reverse the district court's grant of summary judgment to Amentum and remand for trial.

Respectfully submitted,

Sarah Grossman-Swenson
Eric B. Meyers
MCCRACKEN, STEMERMAN &
  HOLSBERRY
5241 Spring Mountain Rd.,
  Bldg. B
Las Vegas, NV 89146
(702) 386-5107

Nicky Downs
Sean LaLiberte
  Student Counsel

/s/ Brian Wolfman
Brian Wolfman
Natasha R. Khan
Becca Steinberg
GEORGETOWN LAW
  APPELLATE COURTS
  IMMERSION CLINIC
600 New Jersey Ave., NW
Suite 312
Washington, D.C. 20001
(202) 662-4071

Counsel for Appellants

December 12, 2025

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-6233

I am the attorney or self-represented party.

**This brief contains** 8,016 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Brian Wolfman **Date** 12/12/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*