Case No. 25-6233

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Jonathan Hill and Phillip Rowton
*Plaintiffs-Appellants*

v.

Amentum Services, Inc.
*Defendants-Appellees*

On Appeal from a Final Judgment of the United States District Court of the District of Nevada Civil Action No. 23-cv-1750, Judge Miranda M. Du

**APPELLEES' ANSWERING BRIEF**

PAUL T. TRIMMER
Nevada Bar No. 9291
JACKSON LEWIS P.C.
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
Email: paul.trimmer@jacksonlewis.com

*Attorneys for Defendants-Appellees*
*Amentum Services, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Amentum Services, Inc., is wholly owned by its sole shareholder Amentum Government Services Holdings Sub LLC, and there is no publicly held corporation owning 10% or more of its stock. Defendant AMENTUM SERVICES, INC. is a citizen of Delaware, the state in which it is incorporated.

Dated: March 23, 2026

JACKSON LEWIS P.C.

*/s/ Paul T. Trimmer*
PAUL T. TRIMMER
Nevada Bar No. 9291
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101

*Attorneys for Defendants-Appellees*
*Amentum Services, Inc.*

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

INTRODUCTION ................................................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 5

ISSUE PRESENTED ............................................................................. 6

STATUTES, REGULATIONS, AGREEMENT AND POLICY INVOLVED ........ 6

STANDARD OF REVIEW ..................................................................... 7

STATEMENT OF THE CASE.................................................................. 7

ARGUMENT .................................................................................... 12

    A.    Appellants Cannot Establish a Violation of Section 4316(b)(1)(B) Because They Cannot Show That They Were Treated Worse Than Similarly Situated Individuals *Because of Their Military Status*. Appellants Can Show Only That Unrepresented Employees Are Eligible for Different Paid Leave Benefits. Unrepresented Workers Are Not Similarly Situated for Purposes of Section 4316(b)(1)(B).. ...... 12

    B.    Appellants' Argument That USERRA Entitles Them to Benefits for Which Their Union Did Not Bargain Is at Odds with the Plain Meaning of Section 4316(b)(1)(B). .................................................... 18

    C.    Summary Judgment Was Appropriate............................................... 23

    D.    The Arbitrator's Determination That the CBA Contains a Bargained-For Benefit Which Precludes Application of the Company's General Military Leave Policy is Preclusive and Binding............................ 27

CONCLUSION .................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. UPS*, No. 2: 21-CV-0114-TOR, 2023 U.S. Dist. LEXIS 115334, at *9

(E.D. Wash. July 5, 2023) ........................................................................ 13,

14, 21, 25

*Belaustegui v. Int'l Longshore & Warehouse Union,* 36 F.4th 919, 927-929 (9th

Cir. 2022) ....................................................................................... 1, 14,

16, 17, 24

*Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021) ...... 7

*Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275 (1946) .............. 25

*Firestone v. S. Cal. Gas. Co/,* 281 F.3d 801, 810 (9th Cir. 2000) ................... 7

*Foster v. Washoe County*, 3:18-cv-00438-MMD-CBC, 2019 U.S. Dist. LEXIS

253267, *10 (D. Nev. October 31, 2019) ....................................... 19

*Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524 (2019) ........ 9

*Huhmann v. Fed. Express Corp.,* 874 F.3d 1102, 1109 (9th Cir. 2017) ............ 7

*Lam v. City of Cleveland*, 167 N.E.3d 124, 132 (Ohio Ct. App.) ..................... 13

*McCarrin v. Pollera*, Case No. CV 17-1691, 2019 U.S. Dist. LEXIS 169606 (E.D.

Pa. Sept. 30, 2019) ............................................................... 23

*Myrick v. City of Hoover*, 69 F.4th 1309, 1315 (11th Cir. 2023) ................... 19

*NLRB v. U.S. Postal Service*, 888 F.2d 1568, 1571 (11th Cir. 1989)............... 15, 16

*SEC v. Barry*, 146 F.4th 1242, 1251 (9th Cir. 2025)........................................ 7

*Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 530 (9th Cir. 2016) ................................................................................................. 4, 27, 28

*Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200 (9th Cir. 1989) .................. 4

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987) ............................................................................................................ 4

*United States v. Nevada*, Case No. 3-24-cv-00026, 2024 U.S. Dist. LEXIS 226569, *22-23 (D. Nev. Dec. 16, 2024).................................................................... 19

**Statutes**

38 U.S.C. § 4316(b)(1)(B). ............................................................*passim*

## INTRODUCTION

The appeal presents a straightforward issue of statutory interpretation: whether employees who are covered by a collective bargaining agreement and subject to the collective bargaining agreement's economic bargain – which necessarily includes negotiated paid leave provisions – are nonetheless similarly situated to employees *who are not* covered by that collective bargaining agreement, and therefore entitled to paid leave benefits available to employees outside the bargaining unit. The District Court correctly concluded, based on the statutory text and its plain meaning, applicable Ninth Circuit precedent and persuasive decisions from other courts, that the answer is no. The District Court's decision should be affirmed because, as a matter of law, the employees covered by the collective bargaining agreement necessarily take leave and enjoy "benefits of employment" under a different "contract, agreement, policy, practice or plan," and have different "seniority, status and pay" than those who are not covered. *See Belaustegui v. Int'l Longshore & Warehouse Union,* 36 F.4th 919, 927-929 (9th Cir. 2022) (holding that the collective bargaining agreement contains determines the "benefits of employment" used to determine if an employee covered by a collective bargaining agreement has been subjected to discrimination in violation of USERRA).

Appellants Jonathon Hill and Phillip Rowton are represented for purposes of collective bargaining by Teamsters, Chauffeurs, Warehousemen and Helpers of

1

America Local Union #631 (the "Union"). ER-3. Their cause of action under the Uniformed Services Employment and Reemployment Rights Act (USERRA) is straightforward. Although there is no dispute that their paid leave benefit under Article 40 of Amentum's collective bargaining agreement ("CBA") with the Union is capped at two weeks, ER-3-4, they believe that the collectively bargained cap does not apply because certain Amentum employees who are *not* represented by the Union, and therefore *not* subject to the CBA, are eligible for up to ninety (90) days of paid military leave.[1] The basis for this belief is Appellants' interpretation of Section 4316(b)(1)(B) of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

USERRA does not obligate employers to provide employees with paid military leave. *See* 38 U.S.C. § 4316. It merely forbids *discriminating* against employees on the basis of their military status, and to that end, USERRA requires *only* that if an employer offers such a benefit, that when awarding the benefit it

---

[1] It appears that Appellants believe that the Arbitrator's construction of the CBA, including his determination that it supersedes Amentum's general military leave policy, is open for reconsideration by this Court – that is it not final, binding and subject to deference under the *Steelworkers Trilogy*. *See* Opening Brief at pp. 13-14. That clearly is wrong. As discussed below, the Arbitrator's determination as to the meaning of the CBA and its effect on the terms and conditions of Appellants' employment is determinative and preclusive. The Court is preempted by Section 301 of the Labor Management Relations Act and the CBA's arbitration clause from reconsidering whether the CBA contains "explicit language" which precludes application of the general policy. *See, e.g., Firestone v. S. Cal. Gas. Co/,* 281 F.3d 801, 810 (9th Cir. 2000).

cannot discriminate against employees with different military status if those employees have similar "seniority, status and pay" and are on leave under the same "contract, agreement, policy, practice or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B). In other words, Appellants' claim is not a claim that employees are being treated differently because of their military service. It is a claim that Appellants were treated differently because they are represented by the Union and their benefits of employment are covered by the CBA. USERRA does not forbid differentiation on that basis, and for that reason, the Complaint is predicated on a fundamental misreading and misapprehension of Section 4316(b)(1)(B)'s plain meaning.

Any claim under Section 4316(b)(1)(B) must satisfy the provision's condition precedents. A plaintiff must show: 1) that they have been denied a benefit (in this case extended military leave), and 2) that same benefit is available to a similarly situated employee (meaning the same seniority, status and pay) on leave under the same contract, agreement, policy, practice or plan. *See* § 4316(b)(1)(B). Appellants cannot satisfy these conditions precedent, and the interpretation proposed in the Appeal would collapse these two requirements into a single, circular assessment. This is wrong. For purposes of Section 4316(b)(1)(B), the "contract[and/or] agreement" pursuant to which Appellants were on leave was Article 40 of the CBA

3

between Amentum and Teamsters Local 631, *see* ER 3-4, *see also* ER 52-58, *not* the general military leave policy. And, Appellants do not share the same "seniority, status and pay" as the unrepresented workers they seek to use as comparators.

A close review of Appellants' brief shows that an integral part of their appeal is a collateral attack on an underlying arbitration award. As set forth in their Opening Brief at pp. 13-14, Appellants contend the CBA "adopts – not precludes – benefits under Amentum's Military Leave Policy," and that the Arbitrator was wrong in determining otherwise. *See* ER 30-34 (Arbitrator Award). This argument is central to Appellants' position that they are similarly situated to other Amentum employees. But accepting that argument would require the Court to vacate the results of the arbitration and reach a different conclusion as to the CBA's meaning and interpretation.

The Court has no authority to do so. It is reviewing the appeal of a decision on summary judgment, not a petition to vacate an arbitration award. Moreover, even if the interpretation of the CBA were before the Court, it would have no basis for departing from the arbitration award. "Because of the centrality of the arbitration process to stable collective bargaining relationships, courts reviewing labor arbitration awards afford a 'nearly unparalleled degree of deference' to the arbitrator's decision." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (quoting *Stead Motors of Walnut Creek v. Auto.*

4

*Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1204-05 (9th Cir. 1989)); *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, his award must be upheld.").

As the District Court concluded, and as set forth in more detail below, because the benefits of Appellants' employment are governed by the CBA, they have a different "status" under Section 4316(b)(1)(B) as matter of law, and the basis for that differentiation is unquestionably lawful. Appellants were neither denied a form of military leave nor subjected to adverse treatment because of their military service. To the contrary, Appellants received the full allotment of paid leave to which they were entitled under the collective bargaining agreement. Appellants contend that the plain meaning of the text is subordinate to USERRA's purpose, but purpose driven statutory interpretation is contrary to Ninth Circuit and Supreme Court precedent. The Court should not nullify the text of Section 4316(b)(1)(B) to expand USERRA's protection and impose a mandatory paid leave benefit, nor should it invalidate Article 40's collectively bargained paid leave benefit based on Appellants' improper construction of the statute.

5

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the appeal. Appellants' claims arise under federal law, specifically USERRA Section 4316(b)(1)(B). The District Court issued a final order and judgment in Amentum's favor on September 4, 2025. ER-9. Appellants' appealed on October 2, 2025. 2-ER-152-3.

## ISSUE PRESENTED FOR REVIEW

Whether Amentum violated USERRA Section 4316(b)(1)(B) when it granted Appellants military leave differential pay in accordance with the terms of its CBA with Teamsters Local 631 even though the terms and conditions of Appellants' employment are governed by that CBA, and as a result, they are are not similarly situated as a matter of law to employees who are not covered by that CBA.

## STATUTES, REGULATIONS, AGREEMENT AND POLICY INVOLVED

Appellants are covered by Amentum's collective bargaining agreement with the Teamsters. 2-ER-56. Article 40 of the CBA sets forth Amentum and the Union's bargain with respect to military leave differential pay: "the equivalent of two (2) weeks' pay in any one calendar year." *Id.* Appellants' claims arise under, and require this Court's interpretation of, USERRA Section 4316(b)(1)(B) which provides:

> **(a)** A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and

6

benefits that such person would have attained if the person had remained continuously employed.

**(b)**

**(1)** Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be—

**(A)**    deemed to be on furlough or leave of absence while performing such service; and

**(B)**    entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1)(B).

## STANDARD OF REVIEW

The District Court's entry of summary judgment is subject to de novo review. *SEC v. Barry*, 146 F.4th 1242, 1251 (9th Cir. 2025). Because the appeal rises and falls on the interpretation of Section 4316, the other relevant standard concerns how the Court interprets statutory text. In that regard, the Court must look, first and foremost, at its plain meaning. "As in all statutory interpretation, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021) (quotations and citations omitted); *see also Huhmann v. Fed. Express Corp.,* 874 F.3d 1102, 1109

7

(9th Cir. 2017) (looking to the "plain language of USERRA").

## STATEMENT OF THE CASE

Amentum provides services to the United States Government at various locations throughout the United States. This case concerns the provision of services to the United States Air Force throughout Nevada pursuant to the Range Support Services II contract ("RSSII"). ER-3-4. Those services are performed at the Air Combat Command (ACC) portion of the Nevada Test and Training Range. *Id.*

Appellants are unexploded ordinance technicians who, at all times relevant to this case, were represented by the Union and covered by the collective bargaining agreement. *Id.* The 2018-2024 collective bargaining agreement dealt specifically with paid military leave in Article 40. *Id.*; ER-56-57. That version of the CBA, which was in effect at the time this lawsuit was filed, provided as follows:

> SECTION 1. Employees who are members of the United States Armed Forces Reserves or National Guard who are ordered to active duty will be granted a leave of absence in accordance with Company Policy and Federal Law.
>
> SECTION 2. The parties agree Employees who are members of the United States Armed Forces Reserves or National Guard who are ordered to temporary training duty be entitled to up to the equivalent of two (2) weeks' pay in any one calendar year. The differential will be calculated on a daily basis using the Employee's base hourly wage rate time eight (8) hours/ten (10) hours and the Employee's basic daily compensation received from the military exclusive of travel pay, subsistence and quarters' allowances. Evidence of orders and amount of military pay are required in order to support military leave pay requests.

8

*Id.*

While employees covered by the collective bargaining agreement were entitled to leave under Article 40, employees not covered by that CBA or another collective bargaining agreement were subject to Amentum's Military Leave Policy which had both different requirements and conferred different benefits. *See* ER-3-4. More specifically, Amentum's policy does not apply to employees who are covered by a collective bargaining agreement which provides otherwise for military leave differential pay.[2] 2-ER-43.

In 2022, the Union filed grievances on behalf of Appellants regarding military leave pay under Article 40. *Id.* Those grievances proceeded to arbitration before Arbitrator Richard Miller on March 30, 2023. *Id.* Arbitrator Miller was tasked with determining "whether [Amentum] employees under the TM4 CBA are entitled to active duty pay of 90 days of differential pay or are they entitled to two weeks of differential pay?" ER-3-4. Following the arbitration, Amentum and the Union both submitted post-hearing briefs. Both briefs contained arguments regarding USERRA.

---

[2]    As discussed below, the Arbitrator's conclusion that the CBA provided otherwise and which limited Appellants to two weeks of pay in accordance with the CBA, is preclusive and beyond the jurisdiction or reconsideration of this Court. *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019).

9

Arbitrator Miller denied the grievance on June 30, 2023. *Id.* He concluded that Amentum had satisfied its obligations under the collective bargaining agreement and had paid the appropriate amount of military differential pay. *Id.* Arbitrator Miller considered the Union's argument that USERRA required a different interpretation of the CBA and concluded that "the union failed to provide any evidence that Amentum violated federal law regarding military pay." *Id.*

Appellants filed this lawsuit only after Arbitrator Miller issued his award. Exhibit 1 (Moore Decl. at ¶ 7). While the lawsuit has been pending, Amentum negotiated a new collective bargaining agreement with the Union. *Id.* at ¶¶ 7-12. Those negotiations took place in August and September 2024; and, during those negotiations, Amentum and the Union both made proposals around paid military leave and USERRA's requirements. *Id.*

The end result of those negotiations was a new collective bargaining agreement with a five-year term from 2024 through 2029. *Id.* (citing Exhibit 4). Article 40 was modified to provide for "fifteen days" rather than "two weeks" of military differential pay:

> **SECTION 1.** Employees who are members of the United States Armed Forces Reserves or National Guard who are ordered to active duty or temporary training duty will be granted a leave of absence in accordance with Company Policy and Federal Law.
>
> **SECTION 2.** The Parties agree Employees who are members of the United States Armed Forces Reserves or

10

> National Guard who are called to active duty or are ordered to temporary training duty shall be entitled to military pay differential up to fifteen **(15) days** pay in any one calendar year. The military pay differential will be calculated on a daily basis using the Employee's base hourly wage rate time eight (8) hours/ten (10) hours and the Employee's basic daily compensation received from the military exclusive of travel pay, subsistence and quarters' allowances. Evidence of orders (official written documentation) must be presented to the Contractor as soon as they are received by the Employee, unless military necessity prevents the giving of notice; or the giving of notice is otherwise impossible or unreasonable in accordance with USERRA. Upon return from active duty or temporary training duty, the Employee must provide a copy of their Leave and Earning Statement(s) to the Contractor for computation of the difference in pay in order to compute the amount of military pay differential.

*Id.* (citing Exhibit 4 at pp. 43-44).

This expanded leave benefit was part of the overall economic negotiation with the Union. *Id.* Much like the fact that employees covered by the collective bargaining agreement are subject to different wage rates, vacation allotments and other provisions, they are entitled to a contractually guaranteed amount of paid leave. Employees who are not covered by Article 40 are not necessarily entitled to paid military leave because USERRA does not require paid leave and Amentum can modify its policy at any time. *Id.* At no time during Amentum's 2024 contract negotiations with the Union did the Union contend that Article 40 was inapplicable or unlawful under USERRA because Amentum had a policy for non-union represented workers that offered a different amount of paid military leave. *Id.*

11

## **ARGUMENT**

**A.** **Appellants Cannot Establish a Violation of Section 4316(b)(1)(B) Because They Cannot Show That They Were Treated Worse Than Similarly Situated Individuals *Because of Their Military Status*. Appellants Can Show Only That Unrepresented Employees Are Eligible for Different Paid Leave Benefits. Unrepresented Workers Are Not Similarly Situated for Purposes of Section 4316(b)(1)(B), however.**

USERRA does not obligate employers to provide employees with paid military leave. *See* 38 U.S.C. § 4316. It requires *only* that if an employer offers such a benefit, that when awarding the benefit it cannot discriminate against employees who have similar "seniority, status and pay" and who are on leave under "a contract, agreement, policy, practice or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B). In other words, Section 4316(b)(1)(B) forbids discrimination against similarly situated individuals on the basis of military status.

Any claim under Section 4316(b)(1)(B) must therefore satisfy the provision's condition precedents. A plaintiff must show: 1) that they have been denied a benefit (in this case extended military leave), and 2) the benefit is available to a similarly situated employee (meaning the same seniority, status and pay) on leave under the same contract, agreement, policy, practice or plan. Based on the undisputed facts, Appellants cannot satisfy these conditions precedent. Here, for purposes of Section 4316(b)(1)(B), the "contract[and/or] agreement" pursuant to which Appellants were on leave was the collective bargaining agreement between Amentum and Teamsters

Local 631.  Pursuant to Article 40 of that Agreement, all employees covered by its provisions are entitled to a leave of absence when ordered to "active duty."  Exhibit 2 at p. 39.  There is no dispute that Appellants were provided with two weeks of paid leave pursuant to Article 40 of the collective bargaining agreement which authorized their leave; and, an arbitrator's award confirmed that Amentum has fully complied with the terms of the collective bargaining agreement.

To the extent that Appellants contend they should have received ninety days of paid leave, that contention is based on a total misreading and misapprehension of Section 4316(b)(1)(B).  Their position assumes away a fundamental difference: Appellants, as a matter of law, cannot be similarly situated to employees who are not covered by the same collective bargaining agreement.  Employees must be covered by the same employment agreement before courts will analyze whether the employees are similarly situated and enjoy the same benefits under the agreement.  *See, e.g., Lam v. City of Cleveland*, 167 N.E.3d 124, 132 (Ohio Ct. App. 2021) ("As USERRA instructs, the city was required to provide employees on military leave the same benefits that it generally provides to other employees 'having similar seniority, status, and pay who are on furlough or leave of absence *under a contract, agreement, policy, practice, or plan in effect * * *.*'" (emphasis in original) (citing 38 U.S.C. 4316(b)(1)(B)); *Baker v. UPS*, No. 2: 21-CV-0114-TOR, 2023 U.S. Dist. LEXIS 115334, at *9 (E.D. Wash. July 5, 2023) (finding that full-time

13

and part-time employees were not similarly situated in status for purposes of USERRA).

Employees who are and are not covered by a collective bargaining agreement cannot be similarly situated as a matter of law for purposes of Section 4316(b)(1)(b). The employees covered by the collective bargaining agreement necessarily take leave and enjoy "benefits of employment" under a different "contract, agreement, policy, practice or plan," and have different "seniority, status and pay" than those who are not covered. *See Belaustegui,* 36 F.4th at 927-929 (holding that the collective bargaining agreement contains determines the "benefits of employment" used to determine if an employee covered by a collective bargaining agreement has been subjected to discrimination in violation of USERRA).

Under USERRA, the Court's analysis should be limited to whether military and non-military employees having similar seniority, status, and pay under the same CBA were offered the same benefits. *Lam,* 167 N.E.3d at 132 ("Our review is limited to what the city can do under the governing CBA in this case; we decline to look at other city employees and their CBAs."); *see also Baker*, 2023 U.S. Dist. LEXIS 115334, at *9. Employees covered by a CBA and employees who are not covered by a CBA (or merely at-will employees) necessarily operate under different employment agreements and are not appropriate comparators for purposes of USERRA.

14

In short, Appellants' claim is built on a fallacy. Even when taking Appellants' arguments as true, they have not been treated differently in a way that violates USERRA's non-discrimination provisions. Their paid leave benefit is not different *because of* their military service. Their paid leave benefits are different because they are covered by a collective bargaining agreement and the terms and conditions of employment that their Union bargained for are dramatically different from the terms and conditions of employment applicable to employees not covered by the collective bargaining agreement. They received two weeks of paid leave because their Union bargained for that result, and as determined at arbitration, that is what the collective bargaining agreement requires. Exhibit 2. For that reason, they are not similarly situated to Amentum's other employees who are not covered by the CBA for purposes of Section 4316(b)(1)(B). They are being treated differently because they have a different *status* for purposes of Section 4316(b)(1)(B) and that status – being covered by a collective bargaining agreement – is not a status that gives rise to a claim under USERRA.

In their Opening Brief, Appellants contend that they are similarly situated to employees not covered by the CBA *because* the general military leave policy applies to everyone. Opening Brief at pp. 22-24. They cite *NLRB v. U.S. Postal Service*, 888 F.2d 1568, 1571 (11th Cir. 1989). Neither the argument nor the citation are persuasive. First, as noted above, the Ninth Circuit has considered whether

15

employees are similarly situated under USERRA. Its decision in *Belaustegui,* 36 F.4th at 927-929, is controlling in that regard. While it is true that the decision does not specifically interpret Section 4316(b)(1)(B), it does clearly set forth a framework for determining when employees are similarly situated when a group of employees is covered by a collective bargaining agreement, and it held that the benefits are determined by the applicable CBA and its bargained for economic terms. *Id.*

Second, insofar as Arbitrator Miller already held that the CBA provides military leave benefits which are *different* from those available under Amentum's general policy, Appellants' argument is both counterfactual and logically flawed. It is counterfactual because this Court has no authority to revisit Arbitrator Miller's construction of the CBA. It is logically flawed because it simply assumes away the issue; it assumes that the CBA does not create a legally significant difference. Opening Brief at p. 22-23. Assuming away a legally significant difference is not a basis for overruling the District Court's decision, nor is it proper statutory interpretation.

To that end, Appellants' reliance on *NLRB v. U.S. Postal Service*, 888 F.2d at 1571, is inappropriate. That case considered whether an employer discriminated against union represented employees when it disciplined those employees for violating its gambling policy but did not discipline supervisors. In that case, the court sensibly held that supervisor status was meaningful when distinguishing such

16

misconduct. That holding has no applicability here, when Appellants' economic and other terms and conditions of employment are materially different due to a collective bargaining agreement. Indeed, relying on it essentially would require the Court to overrule its holding in *Belaustegui,* 36 F.4th at 927-929. The language quoted on Opening Brief at p. 23 – "one rule … applies to both groups" – simply is not true. In this case, Amentum's general policy *does not* apply to Appellants because they are covered by the bargained for terms of Amentum's CBA with the Teamsters. *See Belaustegui,* 36 F.4th at 927-929.

Appellants' argument that they are similarly situated "for additional reasons" fails for the same reasons. First, and perhaps most importantly, it ignores the fact that Section 4316 explicitly ties similarity to terms and conditions of employment under "a contract, agreement, policy, practice, or plan in effect at the commencement of such service." By myopically focusing on Amentum's generally applicable miliary leave policy, Appellants are nullifying the statutory reference to both "contract" and "agreement;" and, as the Ninth Circuit held in Belaustegui, the benefits for employees represented by a union are found in their contract of employment – the collective bargaining agreement – not some other policy that an Arbitrator already has determined does not apply.

For Appellants' argument to be sustained, the Court must conclude that Amentum's generally applicable military leave policy is applicable to them and not

17

precluded by the CBA's application. But in order to do so, it must also revisit and vacate Arbitrator Miller's conclusion that the CBA and the parties' bargained for economic precludes Appellants' eligibility under the generally applicable policy. That is a factual argument that Appellants and their Union submitted to Arbitrator Miller for determination and he ruled against them. The Court has no authority to take a different path when Arbitrator Miller's decision has not been challenged, let alone shown to be so unreasonable and illogical that it does not draw its essence from the contract and therefore should be set aside.

Appellants' attempts to distinguish *Lam v. Cleveland*, 167 N.E. 3d 124 (Ohio Ct. App. 2021) fail for the same reason. Their argument assumes away Appellants' membership in the Teamsters bargaining unit, suggesting that if there is a policy which applies to non-represented employees, membership in a bargaining unit is irrelevant. That logic diverts from Section 4316(b)(1)(B)'s test, which requires employees seeking benefits to show first, a priori, that they are similarly situated, and then assumes away the fact that employees who are covered by collectively bargained agreements which, as Arbitrator Miller found, provides otherwise for a benefit, are not similarly situated as a matter of law.

18

**B.      Appellants' Argument That USERRA Entitles Them to Benefits for Which Their Union Did Not Bargain Is at Odds with the Plain Meaning of Section 4316(b)(1)(B).**

The issue presented by this case is whether a collectively bargained paid military leave benefit, which was bargained as part of the collective bargaining agreement's overall economic package, is unenforceable insofar as an employer maintains an alternative paid military leave benefit for workers not covered by that collective bargaining agreement. Nothing in USERRA's text supports this position. USERRA does not require an Employer to grant *paid* military leave in any amount or on any basis. It forbids, with respect to similarly situated employees, treating military leave worse than non-military leave. It does not follow from that principle that union represented employees are entitled to the same military leave benefits as non-represented workers. Employees covered by a collective bargaining agreement are not, as a matter of law, similarly situated for purposes of Section 4316(b)(1)(B). "USERRA is fundamentally an anti-discrimination statute: its breadth and preemption power do not allow—let alone require—the Court to interpret the statute's reach to extend beyond its plain language." *United States v. Nevada*, Case No. 3-24-cv-00026, 2024 U.S. Dist. LEXIS 226569, *22-23 (D. Nev. Dec. 16, 2024) ("USERRA affords a veteran no 'extra' benefits for having served in the military; s/he gets only what s/he would have gotten had s/he remained on the job, rather than serving"); 38 U.S.C. § 4302(a); *Foster v. Washoe County*, 3:18-cv-00438-MMD-

19

CBC, 2019 U.S. Dist. LEXIS 253267, *10 (D. Nev. October 31, 2019) ("Extending protections under a federal statute is within the purview of Congress—not this Court.").

The Appeal is at odd with Section 4316(b)(1)(B)'s plain meaning and nullifies the provision's requirements that comparators both have "similar seniority, status, and pay" and be on leave under the same "contract, agreement, policy, practice, or plan in effect at the commencement of such service[.]" Cases cited by Appellants are not to the contrary. Indeed, *all of* them, including *Myrick v. City of Hoover*, 69 F.4th 1309, 1315 (11th Cir. 2023), confirm that when applying USERRA, the relevant inquiry is whether *similarly situated* employees have been treated differently. Put differently, there is no claim that other forms of non-military leave are given more favorable treatment under the CBA, only that Appellants are entitled to a military leave benefit not offered under the CBA.

The text of Section 4316(b)(1)(B) does not permit such a claim. It provides that employees are entitled to benefits *only if* those benefits are "**generally provided by the employer of the person to employees having similar seniority, status, and pay** who are on furlough or leave of absence **under a contract, agreement, policy, practice, or plan in effect at the commencement of such service** or established while such person performs such service." (*emphasis added*).

20

Again, this case involves comparing two different paid military leave policies, *not* paid leave policies that apply to military leave on the one hand and non-military leave on the other. Appellants' ineligibility for Amentum's general military leave differential pay policy arose from their coverage under the CBA and was fully and finally determined by Arbitrator Miller. Eligibility did not depend on the basis (military vs. non-military) for leave. As such, even if all of the evidence and allegations are considered in the light most favorable to Appellants, they cannot show that they were denied a benefit available to non-service members in violation of USERRA.

Appellants' distorted misreading of Section 4316(b)(1)(B) and their attempt to persuade this Court that paying Appellants according to the military leave differential benefit negotiated for them by their collective bargaining representative, Teamsters Local 631, violated USERRA despite the fact that the collectively bargained terms and conditions of employment governing their employment render them dissimilar *as a matter of law*. *See, e.g., Lam*, 167 N.E.3d 124, 132 (Ct. App.) ("As USERRA instructs, the city was required to provide employees on military leave the same benefits that it generally provides to other employees 'having similar seniority, status, and pay who are on furlough or leave of absence *under a contract, agreement, policy, practice, or plan in effect * * *.*'" (emphasis in original) (citing 38 U.S.C. 4316(b)(1)(B)); *Baker*, 2023 U.S. Dist. LEXIS 115334 at *9 (finding that

21

full-time and part-time employees were not similarly situated in status for purposes of USERRA).

The interpretation of Section 4316(b) is a question of law. Indeed, while Appellants seem to suggest otherwise, the plain meaning of Section 4316(b)(2)'s text *requires* that employees be similarly situated – "having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service" – in order for the its parity principle to apply. To sustain Appellants' interpretation of the provision, the Court must conclude that *all* of Amentum's employees are similarly situated and entitled to the same military differential pay even though the Company is party to dozens of collective bargaining agreements with material different "seniority, status, and pay" under different "contract[s], agreement[s], practice[s] or plan[s][.]"

But that plainly is *not* what Section 4316(b) requires. Appellants are *not* similarly situated to those Amentum employees who are not members of the RSSII Teamsters 631 bargaining unit because those employees do *not* possess "similar seniority, status, and pay … under" the "contract, agreement, policy, practice or plan" governing the terms and conditions of their employment. Congress explicitly enacted USERRA's so-called "escalator principle" to ensure that *all* veterans receive the same step-up in status upon reemployment, regardless of the "contract,

22

agreement, policy, practice or plan" in effect. *See, e.g., Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275 (1946). Congress' decision to *not* do so in Section 4316(b), and instead contemplate inherently disparate treatment, confirms Defendant's interpretation of the statute. The Appeal should be denied.

And, while Appellants may argue that their interpretation is consistent with legislative intent and should be sustained regardless of Section 4316's text, even that is misleading. USERRA's statutory scheme creates an anti-discrimination statute which forbids differentiation on the basis of military service, *not* on the basis of membership in a collective bargaining unit, nor does it create an escalatorprinciple approach for every benefit that an employer offers. *See McCarrin v. Pollera*, Case No. CV 17-1691, 2019 U.S. Dist. LEXIS 169606, 2019 WL 4857464, at *6 (E.D. Pa. Sept. 30, 2019) ("USERRA affords a veteran no 'extra' benefits for having served in the military; s/he gets only what s/he would have gotten had s/he remained on the job, rather than serving").

**C.      Summary Judgment was Appropriate as a Matter of Law.**

While the Family Medical Leave Act, for example, establishes a baseline of 480 hours/12 weeks of protected family medical leave for all eligible employees without regard and without allowance for differentiation on the basis of "seniority, status, and pay," Congress invited these distinctions when it enacted USERRA's Section 4316. Unlike the FMLA, which obligates a minimum amount of required

leave, USERRA does not obligate employers to provide employees with paid military leave at all. *See* 38 U.S.C. § 4316. It requires *only* that if an employer offers such a benefit, that when awarding the benefit it cannot discriminate against employees who have similar "seniority, status and pay" and who are on leave under "a contract, agreement, policy, practice or plan in effect at the commencement of such service or established while such person performs such service." 38 U.S.C. § 4316(b)(1)(B). In other words, Section 4316(b)(1)(B) forbids discrimination against similarly situated individuals on the basis of military status.

Any claim under Section 4316(b)(1)(B) must therefore satisfy the provision's condition precedents. A plaintiff must show: 1) that they have been denied a benefit (in this case extended military leave), and 2) the benefit is available to a similarly situated employee (meaning the same seniority, status and pay) on leave under the same contract, agreement, policy, practice or plan. Based on the undisputed facts, Appellants cannot satisfy these conditions precedent. Here, for purposes of Section 4316(b)(1)(B), the "contract[and/or] agreement" pursuant to which Appellants were on leave was the collective bargaining agreement between Amentum and Teamsters Local 631. Pursuant to Article 40 of that Agreement, all employees covered by its provisions are entitled to a leave of absence when ordered to "active duty." Exhibit 2 at p. 39. There is no dispute that Appellants were provided with two weeks of paid leave pursuant to Article 40 of the collective bargaining agreement which authorized

24

their leave; and, an arbitrator's award confirmed that Amentum has fully complied with the terms of the collective bargaining agreement.

Employees who are and are not covered by a collective bargaining agreement cannot be similarly situated as a matter of law for purposes of Section 4316(b)(1)(b). The employees covered by the collective bargaining agreement necessarily take leave and enjoy "benefits of employment" under a different "contract, agreement, policy, practice or plan," and have different "seniority, status and pay" than those who are not covered. *See Belaustegui,* 36 F.4th at 927-929 (holding that the collective bargaining agreement contains determines the "benefits of employment" used to determine if an employee covered by a collective bargaining agreement has been subjected to discrimination in violation of USERRA); *Lam,* 167 N.E.3d at 132 ("Our review is limited to what the city can do under the governing CBA in this case; we decline to look at other city employees and their CBAs."); *see also Baker*, 2023 U.S. Dist. LEXIS 115334, at *9. Employees covered by a CBA and employees who are not covered by a CBA are not appropriate comparators for purposes of USERRA. Again, Appellants assume that Amentum's general policy applies to all employees – ignoring that the CBA, as determined by Arbitrator Miller, contains a different leave benefit. Indeed, it is not as if USERRA would require the converse of Appellants' argument – that employees who are not covered by a collective bargaining agreement are nonetheless entitled under USERRA to collectively

25

bargained benefits – but that is what their argument logically requires if membership in a bargaining unit is not a legally salient distinguishing factor for purposes of Section 4316.

As noted above, Congress knows how to enact federal non-discrimination statutes with minimum requirements. Neither the FMLA nor Title VII allow for differentiation among employees on the basis of the factors that Congress explicitly included in Section 4316(b). Even when taking Appellants' arguments as true, they have not been treated differently in a way that violates USERRA's non-discrimination provisions. Their paid leave benefit is not different *because of* their military service. Their paid leave benefits are different because they are covered by a collective bargaining agreement and the terms and conditions of employment that their Union bargained for are dramatically different from the terms and conditions of employment applicable to employees not covered by the collective bargaining agreement. They received two weeks of paid leave because their Union bargained for that result, and as determined at arbitration, which is what the collective bargaining agreement requires. For that reason, they are not similarly situated to Amentum's other employees who are not covered by the CBA for purposes of Section 4316(b)(1)(B). They are being treated differently because they have a different *status* for purposes of Section 4316(b)(1)(B) and that status – being covered

26

by a collective bargaining agreement – is not a status that gives rise to a claim under USERRA.

**D.    The Arbitrator's Determination That the CBA Contains a Bargained-For Benefit Which Precludes Application of the Company's General Military Leave Policy is Preclusive and Binding.**

On appeal, Amentum has not argued that Arbitrator Miller's determination precludes Appellants' case in its entirety.  The District Court denied Amentum's Motion to Dismiss on the grounds that the USERRA issue was not raised explicitly in the hearing.  Arbitrator Miller's award *is* preclusive, however, as to a central tenet of Appellants' argument: that Appellants are eligible for Amentum's general military leave policy despite their coverage by the CBA.  His factual finding that the CBA provides otherwise, and therefore the general policy does not apply, is determinative.

"Because of the centrality of the arbitration process to stable collective bargaining relationships, courts reviewing labor arbitration awards afford a 'nearly unparalleled degree of deference' to the arbitrator's decision." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (quoting *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1204-05 (9th Cir. 1989)). Deference with regard to the arbitration decision applies to both the arbitrator's interpretation of the agreement and the findings of fact. *Id*. "Since the labor arbitrator

27

is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement." *Stead Motors*, 886 F.2d at 1205. "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, his award must be upheld." *Stead Motors*, 886 F.2d at 1205 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (internal quotations omitted). "A court may intervene only when an arbitrator's award fails to 'draw its essence from the collective bargaining agreement,' such that the arbitrator is merely 'dispens[ing] his own brand of industrial justice.'" *Drywall Dynamics, Inc.*, 823 F.3d at 530 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)).

## <u>CONCLUSION</u>

Dated: March 23, 2026

JACKSON LEWIS P.C.

*/s/ Paul T. Trimmer*
PAUL T. TRIMMER
Nevada Bar No. 9291
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
*Attorneys for Defendants/Appellees*

28

## <u>STATEMENT OF RELATED CASES</u>

The undersigned attests that there are no pending cases related to the instant appeal.

Dated: March 23, 2026

<div style="margin-left:40%">

JACKSON LEWIS P.C.

*/s/ Paul T. Trimmer*
PAUL T. TRIMMER
Nevada Bar No. 9291
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101

*Attorneys for Defendants/Appellees*

</div>

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, I hereby certify that this Answering Brief of Appellee complies with the type volume limitation of Ninth Circuit Rule 32-1 because this Answering Brief contains 6,687 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this Answering Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this Answering Brief has been prepared using Times New Roman 14-point font, a proportionately spaced typeface.

Dated: March 23, 2026

JACKSON LEWIS P.C.

*/s/ Paul T. Trimmer*
PAUL T. TRIMMER
Nevada Bar No. 9291
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101

*Attorneys for Defendants/Appellees*

30

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 23rd day of March, 2026. I electronically filed the foregoing **APPELLEES' ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Rebecca Portelli*
Employee of Jackson Lewis P.C.

31